The next case we'll hear was United States v. Jackson, a 23-3-011 case. Good morning. May it please the Court, Kayla Gassman for the appellant Darren Jackson. The District Court erred in this case when it found that officers had probable cause to arrest Mr. Jackson without a warrant for a robbery that occurred six weeks prior. The Court erred by treating informant Kinsley Matthews as an ordinary citizen witness whose reliability could be presumed or who should be believed because the officers subjectively believed her, rather than treating her as a suspect or informant and assessing her veracity and the trustworthiness of her information for itself. Do we conduct a no-vote review? Yes. Then why does it matter whether or not the District Court deferred to the police officer's no-vote review? Do we not view the evidence in the light most favorable to the ruling? I mean, I know your office is contesting our precedent. Yeah, I'm just trying to unpack that a little bit. You know, I think that this Court conducts a no-vote review of the ultimate probable cause determination, but it reviews factual findings for clear error. And our position here is that the District Court, and in reviewing the factual findings, I think is where this Court has said that it defers or it views the facts in light and was favorable to the ruling. But I don't think that that can substitute for requiring the District Court to fulfill its own obligation to do an independent assessment of witness veracity. Well, if we have undisputed facts, however you want to describe them, can we look at those facts and make our determination? I mean, does this, I'm basically asking the same question that Judge Bacarax asked. I think that the problem, and this is why, this is the reason why we suggest a remand might be the appropriate remedy in our brief, is because the problem with what the District Court did is that the District Court essentially skipped over a key part of its own obligation to do an assessment of Matthew's veracity and reliability. So instead, we can walk through things like was this conversation with the law enforcement face-to-face? Were there other things that corroborated this witness's statements? You know, we can go through the long list of other things that are really objective facts and say, well, close enough. Well, the thing, you know, this Court has said multiple times that it does not assess credibility in the first instance. And, you know, and what our argument is, is that the problem with the District Court... Well, is this credibility or probable cause? We're looking at whether or not there's probable cause. You're looking at probable cause, and that's reviewed de novo, but, you know, the only witness who tied Mr. Jackson to the robbery was Kinsley Matthews, and so her reliability is really key to the probable cause determination. And the District Court never independently assessed her reliability or the trustworthiness of her information. So first, because the Court treated her as like an ordinary citizen eyewitness who's presumed to be reliable, that's someone who, you know, witnesses something and voluntarily reports it to the police, that type of witness is presumed to be reliable because there's no obvious ulterior motive to say something other than the truth. By contrast, like an informant or a suspect or somebody involved in criminal activity themselves is not presumed to be reliable. There's a whole line of Supreme Court cases. So what do we do? What do you want here? Do you want reverse or you want remand? I think you could do either. I mean, we think that there was insufficient... Check one, help us. You know, honestly, I think a remand could be the more appropriate remedy because our argument really is that the District Court did not apply the current standard. You'd give the District Court a second chance on this? Well, I think it's hard to argue that the District Court couldn't get a second chance on this. At least, I don't know that the District Court can reopen the hearing, but at least that the District Court could get a chance on remand to apply the correct standard, because our argument really is that the District Court never fulfilled its obligation to do an independent assessment of veracity and reliability. You know, the interesting part about this issue is that probable cause is a legal issue, right? And so the District Court is making this legal adjudication on whether or not there is probable cause. Now, part of the evidence that the judge is looking at is Banthew's credibility. And so if we, on DeNovo review, say, District Judge, you blew it, you got it wrong, then we adjudicate DeNovo this ultimate question of probable cause. The piece of evidence that we look at is Banthew's credibility. And notwithstanding your office's disagreement with our precedent, we have to view all of the evidence, including a witness's credibility, in the light most would have to credit Banthew's credibility. So, you know, I think putting aside how I think that illustrates the problem with the in the light most favorable standard, you know, setting that aside, I actually don't think that that is dispositive here. Because if you defer to the District Court and the District Court deferred to the law enforcement officers or didn't apply the correct standard of what type of witness this was, there's never been any judicial review of the reliability of Matthews, who was the, you know, she was not just part of the probable cause analysis. She was the only person who tied Mr. Jackson to the robbery at all. So probable cause is extremely dependent on her reliability and the trustworthiness of her information. But can't we look at things like the face-to-face delivery of the information, her basically self-inculpatory statements, right? She's observed these events firsthand. That's corroborated that she was there. There's identification of other people who were there by other witnesses. The whole scenario of what happened where to whom is corroborated. So the first problem... Can't we get there just by looking at objective facts? Those are things the District Court should have considered, you know, and I think the District Court should also have considered the circumstances of her statement. Because Mr. Jackson's involvement is not corroborated by anyone else. The victims of the robbery were never asked to identify him. And so that he was there, Matthews is the only person... I thought one of the victims, one of the travelers, as they've been lovingly referred to, Mr. Fernandez, I thought he described... So he gave a description of someone else in the car, but there's no testimony about whether that description matched Mr. Jackson, I don't believe. I thought there was, I apologize, I thought there was a description of him being a male with dark hair and a goatee. And dark, yeah, dark hair. So I believe that's the description that Fernandez gives of the other person in the car. I don't believe that there's testimony that at that time... And remember, this hearing is a long time after the robbery. I don't think there was testimony that Mr. Jackson had a goatee at the time of the robbery. So I think that's the piece that's missing. Okay, he's described an individual and that individual looks as he has described him today. Does that get you anywhere? It does, doesn't it? The problem again is that I think that these are all questions that the district court should have weighed in assessing the reliability and the trustworthiness of her information, while also considering things that undermine it. Like the fact that Matthews herself was a suspect, that the law enforcement officer who interviewed her treated her as a suspect, and that Ms. Matthews identified Mr. Jackson only after the law enforcement officer told her that she would be charged with the robbery if she didn't identify someone else. The fact that the travelers were not asked to identify Mr. Jackson, they were not shown photos or asked to identify him, that Matthews is the person... Well, there wasn't a photo lineup or anything like that. But again, Fernandez described him. Again, I think that there was a description, there was not testimony... That fits the defendant's description. I mean, it fits his description today, but things like facial hair are very changeable. So whether he had a goatee at the time of the robbery, I don't know because it's not in the record. There was not testimony about that. And again, the problem with the deference and the presuming that Matthews is reliable is because officers originally did not seek an arrest warrant, so there was no judicial determination at that point of their probable cause. Then the Judicial Court deferred to the officer's view that they believed Matthews and assumed that she could be reliable because the court treated her as the sort of citizen eyewitness instead of an informant. And now the government is asking this court to defer to the Judicial Court. So there's never been judicial review of Matthews' reliability and the trustworthiness of her information. What do we do with the surveillance information of the defendant that he's associating with Mr. Rick? I mean, I think that is true so far as it goes. I don't know how far it gets anyone other than showing that Jackson and Rick know each other. There's no observation of Mr. Jackson near a blue car, which is the car that Matthews said Jackson was in at the time of the robbery. He's never seen with the car. He said it was blue, but somebody described it as light gray. There's not that much of a difference. He was seen in a light gray Mazda sedan in the days. I think one of the, I believe Mr. Rick was seen in a light gray Mazda. I don't believe Mr. Jackson. Mr. Jackson's car is white. I don't think that's disputed. And no one ever sees him. There were three cars I thought that he was observed driving, or two cars he was driving. And then he also had this white car. And I think at most that is some corroboration that Mr. Jackson knew Rick, but it's a fairly small town. I don't know that that is so much corroboration of Matthew's information that Jackson was at the robbery. And again, you know- Well, it helps you a little bit, doesn't it? I mean, she says that both the defendant and Rick were there. And then later, law enforcement under surveillance sees the defendant with Mr. Rick. Right. That's corroboration in the royal sense, is it not? I mean, it's corroboration of the fact that they know each other. I don't know that it's corroboration of the fact that Mr. Jackson was at the robbery. And again, I think these are facts that the district court could have appropriately considered in assessing her reliability and the trustworthiness of her information. But the court didn't. The court skipped those things. The court also skipped the things undermining her reliability, like the discrepancies of who was driving, what color the car was, how many people were there. The fact that the travelers didn't identify Mr. Jackson, were asked to identify Mr. Jackson. The fact that Matthews only identified Mr. Jackson as being involved after being told that she would be charged if she didn't identify others. The fact that she was an informant at the same time, had pending drug charges, which is not disputed, had an interview the same day about her pending drug charges, where she provided information to the police. So she had multiple incentives to provide potentially false information, either deflecting blame from herself or her confederates, or gaining an advantage with respect to her own dealings with the police. So these are all things that the district court should have correctly considered in assessing her reliability and the trustworthiness of her information. But because the court made errors, treating her as someone whose reliability could be presumed, or deferring to the law enforcement's view, the district court never made that assessment. And so that's why I think a remand would be the appropriate remedy. And I would like to reserve the remainder of my time for rebuttal. Certainly. Good morning. James Brown for the United States. Your Honor, today we're asking this court to affirm, because the district court did not legally err in finding that the officer said probable cause to arrest the defendant when they arrested him without a warrant. Just seven hours before the officers arrested him, a state court judge had signed off on a search warrant for the defendant's residence based upon the same information that the officers relied upon to arrest the defendant. Why is that legally significant? It's legally significant because it shows that a... Well, my colleague just said there was no judicial determination of probable cause. Well, there was. There was the deputy trower submitted an affidavit that he relied upon to arrest the defendant. That affidavit also was submitted to a state court judge for probable cause to search the defendant's residence for evidence of this crime. There's an instrumentality or evidence of the crime as opposed to the commission of crime. There's two probable causes used in both instances, but they mean completely different things. I don't want to take a lot of time, but... Well, it shows that at least the state court judge was convinced that the defendant was involved in this aggravated robbery and that the robbery occurred. Without making those predicate findings, the court couldn't have found any basis to conclude that the evidence or instrumentalities of that crime that he was involved in would be at his residence. So there was judicial review of the exact information that the officers relied upon to search the defendant's residence. And that's in the affidavit of... That's in the affidavit of... Ultimately, the state charges that were dismissed? Correct, Your Honor. They're on comparable cause? Correct, Your Honor. That information is in the affidavit record volume four, starting at page three, I think going on to page 15. Do you agree that the district court here applied the wrong scope of review, or not scope of review, the wrong analysis? No, we do not. Well, Matthews, you think, is just an ordinary citizen giving witness information? Well, you know, that's sort of an interesting question. You can go several ways with that. We agree she had a checkered past. She had pending drug charges. She was right in the middle of this crime. She's hardly the person on the street who walks up and says to the police officer, hey, there's a guy over there trying to steal a car. No, but we're not sure that that is required for somebody to be treated as a victim or a witness of a crime whose reliability is presumed. We're not sure that somebody has to be completely clean and uncheckered for them to be treated. How do we get to the presumption of her credibility? Well, Your Honor, that's where I'd like to circle back to, if I can. This is why the district court did not err. The district court never applied a presumption of reliability to her testimony or to her account. The district court never applied that presumption. If you look in the order that the district court did, I just looked at it over there. I didn't see anything about, I presume, her reliability. But didn't the judge say that the police officer had reasonably viewed her as credible? Yes, and that's based upon the fact of several bullet points, which we put on page 17 of our brief. The district court looked at all the evidence that was presented at the hearing. The district court, if you look at our brief, page 17, the bullet points, the district court looked at the evidence, looked at what was consistent, what was not, looked at very independent things. We never applied a presumption. The presumption was never applied. That's just, that's really, there's no factual basis for that. But is it up to the law enforcement officer to assess credibility? I thought that was the function of the magistrate judge who was adjudicating probable cause. An officer who arrests somebody based on probable cause has to assess credibility because he has to come to conclusion whether there's reasonably trustworthy information to support the arrest. Isn't that, I don't mean to get into the debate with you, Mr. Brown, but isn't that the whole point of all of the cases saying that the magistrate judge has to be a neutral arbiter, that you can't rubber stamp an officer's assessment of credibility? It's up to the neutral magistrate to assess all of that evidence and see whether or not it rises to the level of probable cause. Okay, two points. Number one, the judge here did not rubber stamp the officer's assessment of credibility. The district court made its own assessment of the totality of the circumstances and found that based on the totality of those circumstances, the officers reasonably relied on the information that was available to them. That's the probable cause standard. The probable cause standard, and this goes to her claim of error, does not require that an officer or that a judge independently assess the credibility of somebody who provides information about a crime. That's not in the probable cause standard. And an example of this is the Easton case that I cited in my brief. We have two children in that case who said that someone sexually abused them. The children gave inconsistent accounts. They've misidentified the color of the house, where the house was. One account was internally inconsistent and the court still said, well, there's probable cause. We don't need to have complete consistency or even a credibility finding for there to be probable cause. There just has to be reasonable grounds based on the totality of the circumstances. So her claim of error, really, there's just no legal support for the idea that a district court has to make a credibility finding or a finding about reliability and veracity. There's no support for that. And second, and that goes to the second point, the district court did not presume her reliable. Number three, the district court did actually weigh all of the evidence and found that the officers reasonably relied on the information that they had. So the district court said she was an eyewitness, right? Correct. And the district court talked about presumption, right? So how do we disconnect this? I don't see where the district court talked about presumption. I don't see where the district court talked about the district court did not presume her reliable. The district court independently evaluated all the evidence. See the bullet points on page 17 and 18 of my brief. It recounted the evidence. It harmonized that evidence and said, hey, based upon the totality of the circumstances, the officers reasonably relied upon all the information. Because the witnesses, as your honor pointed out, during the colloquy with my colleague, the officers did an eyewitness interview of the defendant. They had an opportunity to assess her credibility. They knew she had a checkered past. So that's what the district court did. The district court did not even have to make a credibility finding. Well, there is, I'm looking at the district court's findings. Footnote 7, the district court cited Hart's case, which is an unpublished 10th Circuit 2017 case. And he said that that case cited from three other circuits that support the proposition that a single eyewitness is sufficient for probable cause, absent an apparent grudge against the accused. And then he goes on a little bit more about that. And doesn't really say one thing or the other, but certainly suggests that the presumption of credibility for a known eyewitness might be applying here. The last line of that footnote talks about presumption of eyewitnesses. Right, presumption of credibility for an eyewitness versus an anonymous person. The court doesn't say it applied a presumption. The court just pointed out that's just sort of law that bears on its information. The court did call Matthews an eyewitness. Yes, yes. She was an eyewitness. But the court did not, if you look at the ruling, at the writing, the court did not apply it. Say, I presume you're reliable. The court just said, she's an eyewitness. She saw things. And she has more credibility than somebody who's an anonymous tipster. That's the whole point there. So, you know, that being said, so just to review, because we've gotten a little bit, I feel like we've gotten a little bit muddled. Number one, the district court did not. I'll agree with you on the muddled part. OK. OK. So I'd like to clear that up. That was very predictable. I'd like to clear that up. Thank you. Number one, the district court was not required to make credibility findings. Not required. So there's no error. That's what the Easton case stands for. You can have probable cause without a credibility finding, even if there's problems with the credibility. Number two, the district court did not presume Matthews reliable. If you look at what the district court did, which we summarize on page 17 of our brief and bullet points, the district court did not presume her reliable. The district court looked at the evidence. The district court noted that an eyewitness gets that's more credit for reliability than an anonymous person. That's not controversial. That's not the same as saying they presumed her reliable because we think the court's findings show the district court did not presume her reliable. Number three, there was judicial review of what the officers thought about the probable cause. And that's because seven hours before the officers arrested the defendant, a state court judge signed off on a warrant to search defendant's residence for which the state court judge had to find probable cause that the defendant was involved with this crime committed and the defendant committed it in order to search his house for instrumentality of that crime. And that's the exact information that the officers relied on here to arrest the defendant without a warrant. So there was some judicial review of the grounds relied upon by the officers in arresting the defendant. Does the district court have any responsibility to look at the credibility of Ms. Matthews in this case? The district court has, the district court does not have to make a credibility finding just like this court did in the Easton case. The court looked at all the information that there was, the information in the Easton case was conflicting. It was conflicting with two people saying different things. It was internal inconsistent with one person saying different things. And the court said, OK, you know, that's conflicting, but there's still probable cause because probable cause looks at the totality of the circumstances, not who's reliable and who's not. So credibility is a consideration. Yes, Judge Briscoe, but does the district court have to make a finding regarding credibility? No. And the fact that the district court did not does not defeat probable cause here. Can the district court rely on the credibility finding of the officers? The district court can review that finding, yes. Can the court rely on it? I suppose the court can after making its own assessment and evaluating the basis. It looks like that's what the district court did here. Well, we would gently disagree with your honor on that point. If we look at the bullet points on page 17, the district court made its own reliability assessment, its own evaluation. And based on that evaluation, it found that the officers reasonably likely. Well, right out of the order, but absent something more, this simply amounts to credibility weighing, which the officers may do with the information available to them. Right. And we think that's a non-controversial statement. The officers have to be able to make credit. Otherwise, they can't arrest anybody without a warrant, which happens every day in this country. How can they? How can they? They have to be able to make credibility. Well, if we go down this road, aren't all arrests in essence bulletproof? Because, hey, the officer's there. The officers know what they know. They have these credibility abilities. And they've made these findings. So it's a good arrest. Well, no, because this court gets to review whether or not the officers had reasonable grounds to arrest. And whether the witnesses- We can just put aside and should put aside the district court's analysis here and just start over and say, OK, we can look at other things to determine that there's probable cause here. It generally is, generally, yes. Yes. Now, would that say- In this case? Well, we think that's fair. I mean, as Judge Vacarak pointed out, it's de novo review. This court can look at everything and start over if it wants to. And your Honor has pointed out several things the court can look at. So I see I have two minutes left. If the court doesn't have any more questions about that issue, I'd like to talk about good faith for just a minute. OK. If this court finds that there was no probable cause for the arrest, we think that this court should apply the good faith exception. We think it is a given that the officers acted in an objectively reasonable manner in this case. Does good faith even apply here? Don't you have to have a warrant or something that they're relying on? How do we get to Leon? Your Honor, we briefed that in our brief and the way- I read that and I don't follow it, quite frankly. OK. So the Supreme Court has said that real deterrent value is a necessary condition for exclusion of the evidence. If the officers act in an objectively reasonable manner and do not commit any misconduct, there's no real deterrent value to be gained by applying an exclusionary rule. That's what it comes down to. The Supreme Court says that the harsh sanction of exclusion cannot be applied to objectively reasonable law enforcement conduct because in that case, there would be no deterrent value to applying the exclusionary rule. Application of exclusionary rule is the last resort, not the first resort. That's what the Supreme Court has said. This court has a third-party rule that your Honor has talked about. Our position is that this third-party rule has been superseded and invalidated by Haring and Davis, which established a new culpability framework for analyzing whether or not the exclusionary rule should be applied. Do we have to conclude then that Haring and Davis have indisputably and pellucidly overruled or abrogated our precedence? We think that the court has to conclude that they've invalidated it or the court can also, yes, yes, the court has to conclude that and we'd ask the court to look at Justice Gorsuch's discussion of the new culpability framework that Davis and Haring set forth in the Nicholson case, which we cited in our 28J letter. And that new culpability framework basically says that an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus of applying the exclusionary rule. This court's third party rule ignores the new culpability framework. That's our main point. We're just asking the court to apply the new culpability framework whether or not the officer relies on the mistake of a third party because the exclusionary rule cannot apply to objectively reasonable law enforcement conduct. That's what the Supreme Court says. Unless there are any questions, I'd retire and ask for affirmance. Thank you. I want to try to make several points. First on the question of did the judicial court apply a presumption of reliability? Clearly the court did. In pages six and seven of the order, the judicial court cites case law talking about a single eyewitness. All of the cases, which we explain in the briefs that the court's relying on, contain this assumption that an ordinary citizen witness is presumed to be reliable and distinguishes that from an informant. The government talked repeatedly about the Easton case. The Easton case in this case is one that explains exactly why an ordinary citizen eyewitness is treated differently from an informant. Just a brief quote from Easton. We begin by noting that when examining informant evidence used to support a claim of probable cause for a warrant or a warrantless arrest, the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, can't say that word, is appropriately relaxed if the informant is an identified victim or ordinary citizen eyewitness. So that's the standard. The court treated Matthews as an ordinary citizen when she is, in fact, suspect, informant, certainly someone involved in the criminal world. And then the search warrant. The search warrant, I think, is just irrelevant. There was nothing found as a result of the search warrant. When the search warrant was executed prior to the arrest, nothing was found. So there was no basis for us to challenge the search warrant. The search warrant had several problems, but that wasn't litigated because we had no way to litigate that because there were no fruits from it. It had probable cause problems as well. It potentially had a nexus problem. It never really explains why they can search the house and what they expect to find in the house. But again, we can't just assume the warrant is valid. There was no reason to litigate it. I'll address good faith just briefly. I think Judge Briscoe is entirely correct. We don't see how that can possibly apply here. The court finds that there is no probable cause. This court has said repeatedly in controlling case law that good faith requires the officers to be relying on a mistake by a third party, like a judge, or someone not involved in the conduct that violated the Fourth Amendment. We don't have that here. Even Herring and Davis, the court, or the cases that the government is relying on to say that those overruled ten circuit precedent, those cases still involve mistakes by third parties. So that cannot possibly clearly overrule this court's precedent. Even if we were under some more amorphous standard of deterability, which is the standard that Herring talks about, can the officer's conduct be deterred? I think this is conduct that can quintessentially be deterred by exclusion by jumping to an arrest with insufficiently reliable information. Having chosen to forgo getting an arrest warrant is exactly the type of conduct that exclusion is meant to deter. If there are no questions, we ask this court to remand or reverse. Thank you. This matter is submitted.